IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

DONNA M. W.,

              Plaintiff,

                                Civil Action No.
                                6:18-CV-0364 (DEP)

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.
_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

DONNA M. W., *Pro Se*
6 Division Street
Ilion, NY 13357

FOR DEFENDANT:

HON. GRANT C. JAQUITH         ARIELLA R. ZOLTAN, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

This is an action brought by *pro se* plaintiff Donna M. W. pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), challenging a final determination of the Commissioner of Social Security ("Commissioner") concluding that she was not disabled at the relevant times, and therefore ineligible for the Social Security benefits for which she applied. Based upon a careful review of the administrative record that was before the agency, and applying the requisite deferential standard, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, for the reasons that follow, the Commissioner's determination is affirmed, and plaintiff's complaint is dismissed.[1]

I.     <u>BACKGROUND</u>

Plaintiff was born in November 1960, and is currently fifty-eight years of age. Administrative Transcript at 128,132.[2] At the time of the alleged onset date of plaintiff's disability, August 1, 2014, she was fifty-three years

_____

[1]     This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c) and General Order No. 18 of this court. *See* Dkt. No. 4.

[2]     The administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time of its determination in this matter, and was filed by the Commissioner on July 16, 2018, Dkt. No.10, will be hereinafter cited as "AT ___."

old. *Id.* Plaintiff resides in a two-story house in Little Falls, New York, with her friend, Edward McGrady. AT 37-38, 122. She received a high school diploma, and has taken one or two years of college courses. AT 164, 311. Plaintiff is five feet and two inches in height, and weighs one hundred and eighteen pounds. AT 163.

Plaintiff last worked sometime between June and August of 2014.[3] AT 33, 163. Her past employment has included working as (1) a pizza maker/server in a restaurant (2000-2002); (2) a planter at a nursery (2003-2005); (3) a sanitizer with a water company (2006-2007); (4) a laborer at a manufacturing plant where she tested, built, and cut medical cables (2009-2011), and (5) a home health aide (2012-2014). AT 35-36, 64, 214, 311. Plaintiff has also held temporary employment monitoring elections, including in 2016. AT 34.

Plaintiff suffers from several diagnosed medical conditions, including a sleep disorder, fibromyalgia, degenerative joint disease in both knees, degenerative changes to her cervical spine, chronic right wrist pain, degenerative changes in her bilateral hips, and anxiety and depression. AT 318-20, 251, 344. Plaintiff also underwent bilateral carpel tunnel

---

[3]     Plaintiff reported to her consultative examiner, Dr. Jeanne Shapiro, that she left her last full time employment as a caregiver in June 2014 due to lack of work. AT 311.

release surgery sometime in 2007. AT 39, 306, 318.

Plaintiff receives primary health care from Family Nurse Practitioner Lenore Lampert. AT 249-281, 287-309, 322-325. She has also been referred for a neurology consultation to Slocum Dixon Medical Group, where she has been seen by Dr. Ute Dreiner and Physician Assistant Mary Gambino. AT 326-46. She was seen at that practice on September 11, 2015 (AT 342, 245, repeated at AT 350-59), October 27, 2015 (AT 339-41, repeated at AT 360-62), January 22, 2016 (AT 334-36, repeated at AT 372-74), June 7, 2016 (AT 330-33, repeated at AT 391-94), October 6, 2016 (AT 326-29, repeated at AT 395-98).[4] Plaintiff has been prescribed a number of medications for her conditions, including Protonix, amitriptyline, vitamin D, gabapentin, venlafaxine, duloxetine, tizanidine, Spiriva HandiHaler, alprazolam, meloxicam, nabumetone, ciprofloxacin, and prednisone. AT 166, 308, 323, 325-26.

Plaintiff is able to dress, bathe, and groom herself. AT 314, 319. Plaintiff's daily activities include feeding and taking care of both a cat and a dog, washing dishes, cleaning and vacuuming, grocery shopping and running errands, driving, watching television, and socializing with her

---

[4]     During her initial consultation on September 11, 2015, plaintiff reported to Dr. Dreiner that while she was tired all the time she was "still involved with heavy household chores such as splitting and stacking wood." AT 342.

4

family and friends. AT 38-40, 71, 314, 319. Plaintiff has multiple hobbies, including reading, sewing, painting, drawing, and crocheting. AT 314. Plaintiff is a life-long smoker who currently smokes one pack of cigarettes per day, and has been diagnosed as suffering from tobacco abuse. AT 276, 307, 319, 325, 342, 363-64.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for Social Security disability and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act, respectively, on December 15, 2014. AT 127-137. In those applications, she alleged a disability onset date of August 1, 2014, and claimed that she is unable to work due to mental health problems, carpal tunnel syndrome, arthritis, osteoporosis, knee problems, a left hip condition, cataracts, and fibromyalgia. AT 37, 128, 132, 163.

Following an initial denial of those applications, a hearing was conducted by Administrative Law Judge ("ALJ") Michael Carr, on November 17, 2016, to address plaintiff's claim for benefits. AT 28-49. Following that hearing, ALJ Carr issued a decision on April 20, 2017, concluding that plaintiff was not disabled at the relevant times and therefore ineligible for the benefits that she sought. AT 13-23. ALJ Carr's

opinion became a final determination of the agency on February 13, 2018, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 1-6.

        B.    <u>Proceedings Before This Court and Plaintiff's Failure to File a Brief</u>

Plaintiff commenced the present action on March 26, 2018. Dkt. No. 1. Her *pro se* complaint consists of a fill-in-the-blank form, in which she complains "of a decision which adversely affects the plaintiff in whole or in part," but provides no elaboration and fails to discuss the arguments raised in support of her claims. *Id.* at 1. Following the Commissioner's filing of the administrative transcript of proceedings and evidence before the agency on July 16, 2018, Dkt. No. 10, plaintiff was afforded several opportunities to file a brief, *see* Dkt. Nos. 10, 12, but failed to do so, and did not file any requests to enlarge the time within which to oppose the Commissioner's brief, which was filed with the court on November 23, 2018. Dkt. No. 16.[5]

By failing to file a brief, it follows that plaintiff has failed to set forth all grounds that she contends entitle her to relief. *See* General Order No. 18,

---

[5]    Pursuant to General Order No. 18, although the Commissioner was permitted to file a motion to dismiss plaintiff's complaint based upon her failure to prosecute, the Commissioner instead elected to brief the merits of the ALJ's determination.

¶ C. Plaintiff's complaint, with nothing more, is conclusory and insufficient to defeat the Commissioner's motion for judgment on the pleadings. Dkt. No. 1; *see, e.g.*, *Ross v. Colvin*, No. 13-CV-00755, 2014 WL 5410327, at *4 (N.D.N.Y. Oct. 21, 2014) (Mordue, J., *adopting report and recommendation of* Dancks, M.J.); *Feliciano v. Barnhart*, No. 04-CV-9554, 2005 WL 1693835, at *10 (S.D.N.Y. Jul. 21, 2005); *Reyes v. Barnhart*, No. 01-CV-4059, 2004 WL 439495, at *3 (S.D.N.Y. Mar. 9, 2004); *Worthy v. Barnhart*, Civ. No. 01-CV-7907, 2002 WL 31873463, at *1 (S.D.N.Y. Dec. 23, 2002). Nonetheless, I will address each of the issues that plaintiff could potentially raise, include those addressed in the Commissioner's brief. *See generally* Dkt. No. 15. [6]

III.    DISCUSSION

    A.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

---

[6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18, of this court, under which the court considers the case as if both parties have submitted a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or his physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

B.    The ALJ's Decision

In his decision, ALJ Carr applied the five-step sequential test for

determining disability, described above. After concluding, at step one, that plaintiff had not engaged in substantial gainful activity since her alleged disability date of August 1, 2014, notwithstanding the fact that she did undertake some temporary employment in 2014 and 2016, he found, at step two, that plaintiff suffers from severe impairments that significantly limit her ability to perform basic work activities, including degenerative joint disease in her bilateral knees, degenerative changes in her cervical spine, and degenerative changes in her bilateral hips. AT 15-16. In making that determination, ALJ Carr rejected carpal tunnel syndrome ("CTS"), a right wrist condition, cataracts, anxiety, COPD, fibromyalgia, and anxiety as also representing severe impairments. AT 16-19. Addressing specifically plaintiff's claim of fibromyalgia, while acknowledging that plaintiff was diagnosed as suffering from that impairment, ALJ Carr concluded that the requirements of Social Security Ruling ("SSR") 12-2P, which addresses, fibromyalgia, were not met. *Id.* AT 18-19; *see* SSR 12-2p, 2012 WL 3104869 (Jul 25, 2012).

ALJ Carr next concluded, at step three, that plaintiff's severe impairments did not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically considering

Listings 1.02 and 1.04. AT 19. Listing 1.02 was rejected based upon the lack of evidence that claimant cannot ambulate or perform fine or gross movements effectively. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 The ALJ concluded that Listing 1.04 was not met or equaled since plaintiff does not have a spinal disorder that results in the compromise of a nerve root or the spinal cord, with evidence of nerve route compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, or lumbar spinal stenosis. AT 19; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

ALJ Carr next surveyed the available record evidence, and concluded that despite her impairments, plaintiff retains the residual functional capacity ("RFC") to perform light work, as defined in the regulations, except that she can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, and additionally can only occasionally stoop, kneel, crouch and crawl.[7] AT 19-22.

---

[7]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at
> a time with frequent lifting or carrying of objects
> weighing up to 10 pounds.   Even though the weight
> lifted may be very little, a job is in this category when
> it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some
> pushing and pulling of arm or leg controls.   To be
> considered capable of performing a full or wide range

Proceeding to step four, and with the benefit of testimony from a vocational expert, ALJ Carr concluded that based upon her RFC, plaintiff is capable of performing her past relevant work as a cable maker, not as actually performed, which was at the medium exertional level, but as generally performed in the national economy. AT 22-23; *see* AT 45-46. The ALJ thus concluded that plaintiff was not disabled at the relevant times, and is therefore ineligible for the benefits for which she applied. AT 23.

C.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

---

of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting

*Richardson*, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951; *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency. *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd*., 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health & Human Servs*., 705 F.2d 638, 644 (2d

Cir. 1983).

D.    Analysis

Lacking the benefit of a brief from plaintiff outlining her areas of

disagreement with the Commissioner's determination, I have reviewed

ALJ's Carr decision with an eye toward determining whether any apparent

errors were committed.

1.    RFC Finding

A claimant's RFC represents a finding of the range of tasks she is

capable of performing notwithstanding the impairments at issue. 20 C.F.R.

§§ 404.1545(a), 416.945(a); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x

29, 33 (2d Cir. 2013). An RFC determination is informed by consideration

of "all of the relevant medical and other evidence." 20 C.F.R. §§

404.1545(a)(3), 416.945(a)(3); *Tankisi*, 521 F. App'x at 33.

To properly ascertain a claimant's RFC, an ALJ must assess

plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift,

carry, push and pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). Nonexertional

limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. *Id.* When rendering an RFC determination, the ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning her capabilities will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *accord, e.g., Bump v. Comm'r of Soc. Sec.*, No. 15-CV-1077, 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016) (Suddaby, C.J.). In addition, the ALJ's RFC determination must be supported by substantial evidence. *Ferraris*, 728 F.2d at 587; *accord, Bump*, 2016 WL 6311872, at *3.

In formulating his RFC finding, ALJ Carr carefully considered both the available medical records, including the results of two consultative examinations, as well as plaintiff's testimony and her reported daily activities. AT 19-22.

Addressing plaintiff's allegations of bilateral hip and knee pain, the ALJ properly noted that x-rays taken of plaintiff's knees bilaterally on April 10, 2015 revealed only mild degenerative changes. AT 21; *see* AT 259. In addition, x-rays of plaintiff's hips, taken on the same day, reflected degenerative changes with no acute finding. AT 21; AT 258. As ALJ Carr also observed, literally every treating and examining source observed that

plaintiff walked with a normal gait throughout the relevant period. AT 21, referring to, *e.g.*, 252, 319, 328, 331-32, 335, 341. The ALJ also noted that when conducting her consultative examination in April 2015, Dr. Elke Lorensen observed that plaintiff needed no help changing for the exam, getting on and off the examination table, and rising from the chair. AT 21, referring to AT 319. Dr. Lorensen's examinations also revealed only relatively benign findings. AT 319-20.

These findings draw support from plaintiff's treatment records. During one of her examinations, FNP Lampert found no joint swelling, no muscle atrophy, no muscle spasm, and no reflex deficits, and negative straight leg raising. AT 275. Dr. Dreiner, a neurologist, noted in September 2015, that plaintiff demonstrated a "good" range of motion in her hips, and found no affusion or crepitus in plaintiff's knees. AT 343. While PA Gambino found some tenderness and crepitus in plaintiff's knees in June and October 2016, and diagnosed bilateral osteoarthritis, the PA found no tenderness in plaintiff's bilateral hips. AT 327-28, 332. These findings, combined with plaintiff's wide range of daily activities, fail to support a greater limitation in plaintiff's RFC than found with respect to plaintiff's hip and knee impairments.

Turning to plaintiff's alleged neck impairment, ALJ Carr noted that an

x-ray of plaintiff's cervical spine revealed only multi-level degenerative spurring, but without definite acute fracture. AT 21, referring to AT 260. The ALJ also noted that Dr. Lorensen found a full range of motion in plaintiff's cervical spine, with no tenderness, spasm or trigger points in her neck. AT 22, referring to AT 319-20. Similarly, while Dr. Dreiner did note that plaintiff had early degenerative joint disease in her neck, he found good range of motion of her shoulders. AT 343. Similarly, PA Gambino found no tenderness to palpation of plaintiff's neck in October 2016. AT 327.

The ALJ also considered plaintiff's complaint of chronic wrist pain. AT 16. While noting that plaintiff reported undergoing carpal tunnel release surgery prior to 2010 he also noted that she denied having any carpal tunnel symptoms during the time of her consultative examination with Dr. Lorensen. *Id.*, referring to AT 318. He also noted that x-rays of plaintiff's right wrist, taken on December 2, 2016, reflected a post-surgical and degenerative changes, but with no acute abnormality. *Id.*, referring to AT 399. While it is true that Dr. Lorensen and FNP Lampert both found reduced flexion of plaintiff's right wrist, compared to her left, Dr. Lorensen found full grip strength in plaintiff's right hand and intact hand and finger dexterity. AT 275, 320. Dr. Greiner, while noting "some subtle hypertrophic

changes in [plaintiff's] hands," found no synovitis in her wrists. AT 343. It was noted by ALJ Carr that PA Gambino found no tenderness in plaintiff's wrists, with normal fist closure. AT 22, referring to AT 327-28, 331-32. Plaintiff's reported daily activities, which include washing dishes, cleaning, cooking, shopping, driving, and splitting and stacking wood, similarly support the finding that plaintiff's chronic right wrist pain does not limit her ability to perform light work.

In his decision, ALJ Carr also considered plaintiff's anxiety. AT 16. He noted, however, that plaintiff did not experience any hospitalization or receive any outpatient psychiatric treatment, and that her anxiety was well-controlled with medication. *Id.* referring to AT 311, 376. The rejection of plaintiff's anxiety as imposing more than minimal limitation on her ability to perform work related functions is adequately supported by the opinion of Dr. K. Lieber-Diaz whose opinion, while that of a non-examining expert consultant, can provide substantial evidence to support a finding at step two. *See, e.g.*, *Cassandra K. v. Comm'r of Soc. Sec.*, No. 5:18-CV-86, 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019) (Baxter, M.J.) ("A well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may also provide substantial evidence supporting an ALJ's decision.") (citing *Leach v.*

*Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)).

Based upon the foregoing I conclude that ALJ Carr's RFC finding is adequately supported by substantial evidence.

## 2.    Consideration of Plaintiff's Reported Symptomology

An ALJ must take into account a plaintiff's subjective complaints in rendering the five-step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, an ALJ retains the discretion to "weigh the credibility of the claimant's testimony in light of the other evidence in the record." *Id.*

A plaintiff's subjective complaints are entitled to great weight when they are consistent with and supported by objective clinical evidence demonstrating that she has a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[8]  20 C.F.R. §§ 404.1529(a), 416.929(a); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725

---

[8]    Indeed, under the Social Security Act, a claimant must provide medical evidence supporting a finding of disability. 42 U.S.C. § 423(d)(5)(A).

(2d Cir. 1983)). The ALJ must consider other factors to assess a claimant's subjective symptomology, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of any symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other relevant factors, the ALJ may accept or reject claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151. If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Tome v. Schweiker*, 724 F.2d 711, 713 (2d Cir. 1984); *accord, Martone*, 70 F. Supp. 2d at 151. Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984); *accord, Monette v. Colvin*, 654 F. App'x 516, 519 (2d Cir.

2016).

In his decision, ALJ Carr recounted plaintiff's testimony concerning her symptoms. AT 20. During the hearing plaintiff testified that she cannot work because she is always tired and does not sleep well, and that her right hand does not work, requiring her instead to use her left hand for everything. *Id.* He noted, moreover, plaintiff's testimony that she is unable to walk to the mailbox because of pain in her knees, that holding on to the vacuum cleaner is difficult, and that she is only able to clean one room per day. *Id.* He concluded, however, that the evidence did not support plaintiff's claims. *Id.* at 20-22.

For the reasons set forth above, plaintiff's claims are not supported by either the objective medical evidence, including, consultative examinations of Dr. Lorensen and Dr. Jeanne A. Shapiro, or plaintiff's reported daily activities. By way of one example, while plaintiff claims that she is unable to utilize her right hand for anything, she also testified she is able to drive, shop, wash dishes, feed her pets, and do some cleaning.[9] AT 37-41.

It was also noted by the ALJ that plaintiff was not fully compliant with

---

[9]     During his testimony, plaintiff's roommate stated that despite being consistently tired, plaintiff manages to keep their two-story home "spotless." AT 43.

her prescribed medication or treatment. AT 21, referring to AT 331, 334. According to PA Gambino, plaintiff's condition had deteriorated by January 2016 because she was not taking her prescribed medications. AT 334. In addition, plaintiff rejected PA Gambino's offer of a prescription for physical therapy. AT 328. When plaintiff did comply with her medication regimen, she noted that it helped with her pain and fatigue, and she denied experiencing any side effects. AT 21, *see, e.g.* AT 339, 376, 385. As was noted above, moreover, plaintiff's claim of difficulty in even walking to her mailbox is undermined by her report to Dr. Greiner in September 2015 that she was still performing such heavy household chores such as splitting and stacking wood. *See* AT 342. In sum, ALJ Carr properly considered, but rejected, plaintiff's reports of her symptomology as overstated and not fully credible.

### 3.    Evaluation of Plaintiff's Fibromyalgia

As ALJ Carr acknowledged, the medical evidence includes reference to plaintiff having been diagnosed with fibromyalgia. *See* AT 18. In addressing this diagnosis, the ALJ acknowledged the guidance provided under SSR 12-2P, which requires both that a fibromyalgia diagnoses be from an acceptable medical source, and an indication that the diagnosis is based on a complete medical history and physical examination. AT 18-19;

SSR 12-2P requires that the claimant meet either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria. See SSR 12-2p, 2012 WL 3104869. Under the 1990 ACR Criteria, a claimant must present with (1) a history of widespread pain in all quadrants of the body has persisted for at least three months; (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *2. The 2010 ACR Preliminary Diagnostic Criteria are met upon a showing of (1) history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations were excluded. *Id.* at *3; *see also Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 18-CV-184, 2019 WL 2358529, at *4–5 (N.D.N.Y. June 4, 2019) (Dancks, M.J.) (quoting *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 93 (W.D.N.Y. 2015)); *see Tammie S. v. Berryhill*, 18-CV-174 (CFH), 2019 WL 859263, at *9-*10 (N.D.N.Y. Feb. 22, 2019) (Hummel, M.J.)).

In this instance, despite having been diagnosed with fibromyalgia, there is no evidence that plaintiff demonstrated the existence of eleven

tender points on her body or six or more fibromyalgia symptoms. AT 18-19. Similarly, as the ALJ noted, there is no indication that treatment providers ruled out other possible diagnoses or causes of her reported symptoms. *Id.* Accordingly, ALJ Carr reasonably concluded that the requirements of SSR 12-2P necessary to support a finding of fibromyalgia were not met. *Id.*; *see Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) (concluding that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."); *see also* SSR 12-2P, 2012 WL 3017612, at *2 ("We cannot rely upon the physician's diagnosis alone.").

    4.    <u>Step Four Determination</u>

A claimant is not disabled if he or she can perform past work as actually or generally performed. 20 C.F.R. § 404.1560(b)(2). It should be noted, parenthetically, that the burden of establishing an inability to perform past relevant work at step four of the sequential analysis rests with the plaintiff. *McIntyre v Colvin*, 758 F.3d 146, 150 (2d Cir 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

In this case, ALJ Carr properly relied upon the testimony of a vocational expert regarding plaintiff's prior work, which was classified as that of a cable maker, listed in the *Dictionary Occupational Titles* ("DOT")

as No. 728.684-010. AT 23, referring to AT 45. During the hearing the vocational expert testified that while plaintiff performed her cable maker job at the medium exertional level, as generally performed in the national economy, the position is characterized as light, semi-skilled work. AT 45. The vocational expert was asked whether a hypothetical individual with the plaintiff's RFC and vocational profile could meet the requirements of that position as generally performed in the national economy, to which the vocational expert replied that she would. AT 45-46.

As was previously indicated, it is plaintiff's burden to show that she is unable to perform her past relevant work. *Jasinski*, 341 F.3d at 185. Because plaintiff has failed to carry her burden of providing that she is incapable of performing in that position, her challenge must fail.

IV.   SUMMARY AND ORDER

Based upon a careful review of the Commissioner's determination finding that plaintiff was not disabled at the relevant times, and therefore ineligible for the benefits applied for, I conclude that it was based upon proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings is GRANTED, the Commissioner's determination that the plaintiff was not

disabled at the relevant times and thus is not entitled to benefits under the Social Security Act, is AFFIRMED, and the clerk is respectfully directed to enter judgment based upon this determination DISMISSING plaintiff's complaint in its entirety; and it is further hereby.

ORDERED that the clerk of the court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    June 25, 2019
           Syracuse, New York